We'll hear argument first this morning in Case 12-62, Peugh v. United States. Mr. Kinnard. Mr. Chief Justice, and may it please the Court, in sentencing Petitioner Marvin Peugh, the District Court applied the 2009 Guidelines Sentencing Range of 70 to 87 months, rather than the 1998 range of 37 to 46 months applicable at the time of his offense. Retroactive application of harsher guidelines passed after the offense violates the ex post facto clause if it creates a significant risk of increased punishment. Now, the government here objects that a guidelines amendment does not change the law, but that is incorrect. The guidelines are legislative rules that define a term of a mandatory statute, namely subsection A-4 of section 18 U.S.C. Scalia. Excuse me, a mandatory schedule? Excuse me? A mandatory schedule, you say? No, it's a term of a mandatory statute, subsection A-4. Okay. Of 18 U.S.C. 3553. That provision requires the district court to consider the Guidelines Sentencing Range, and I'll quote, ''established for the applicable category of offense committed by the applicable category of offender.'' ''Shall consider, as applied to Pugh's offense and offender category, a sentencing range of 37 to 46 months.'' Well, let's say you prevail and the case is remanded for resentencing. Is there anything that would prevent the district court from saying, you know, before the promulgation of the new guidelines, I thought the range in the old guidelines was about right for this offense. But now that I've seen the new guidelines, I think that those really fit best under the factors that I have to consider under the statute in determining the correct sentence. So I'm going to reimpose exactly the same sentence, not because it's required by the guidelines. In fact, I'm going to go outside the guidelines. I just think, with the enlightenment that the new guidelines have provided me, that that's the best sentence. Would that be, would there be an ex post facto problem there? No, it would not, Your Honor. You would, under the statute, have to follow all the steps in the Ridegall framework. But the district court is always able to consider any new developments that it wants. What we're talking about is the change of law. And that was the point I was just getting to. Scalia. Well, it's not a change of the law if the law does not require the guidelines to be imposed. Your case rests upon the proposition you stated at the outset, which is that the ex post facto law applies, prohibition applies, if there is a substantial possibility of a higher, was that the language you used? Substantial, significant risk. Significant risk. Suppose, suppose the district judge for the Federal district in which somebody's crime was committed was a bleeding heart judge. He always gave the lowest sentence possible, and everybody knew that. And he is replaced, he retires after the arrest, after the crime, and he is replaced by Maximum John, who everybody knows gives the highest sentence every time. Ex post facto violation? No, because the ex post facto clause only applies to laws where he or delegated lawmaking. And here's where the change in the law was, Your Honor. As I mentioned, in 1998, the law required the district court to consider a sentencing range of 37 to 46 months. With the Guidelines Amendment, the law changed. The law now required the district court for that category of offender and offense to consider as the plaintiff. Is that what your definition of legal consequence is? Well, legal consequence refers to punishment. That's something different. So you're taking – you're disagreeing with the proposition of our older cases, that for there to be an ex post facto violation, you have to have a legal consequence. No, not at all, Your Honor. The legal consequence is the ultimate sentence imposed, and in Morales and Lentz, the Court said – There's a disconnect for me. Yes, I do accept that the district courts have to consider the guidelines, but how do you tie that to the requirement that the punishment has to be tied to the guidelines? The Court said in Morales and in Lentz that when it was reconciling two different formulations of the standard, and in Lentz the Court said it's the same test, whether you increase the penalty or whether you determine if there's a sufficient risk of increasing the penalty, because that's the same test. The formula is significantly increase the risk of performing – of prolonging the defendant's incarceration. That's the standard you would like us to apply. That's the standard of Garner and Morales, yes, Your Honor. And is the heart of your argument that there really isn't much difference at all in what district judges are doing now that the guidelines are discretionary than what they did when they were mandatory? That is, most of them will start with and stop with the guidelines. That's – I think that's – Yes. That is certainly one element of it. But the fact – it's not exactly the same, but the fact is that even under the advisory guidelines, the change in law creates a significant risk. And when you're evaluating significant risk, I think you have to start from the premise that the ex post facto violation prohibits an increase in punishment of any quantum, even a month or a day. Kennedy, your brief spends some time on statistics, how often this happens. But I take it you're not saying that our inquiry is a statistical one. You're simply saying that the statistics bear out that as an objective legal matter, the framework that you are explaining to us is and must be followed. Yes, Your Honor. The – and that's the inquiry in Garner. In Garner, the Court said you can demonstrate significant risk either by showing that the risk is inherent in the rule or as applied to your sentence and marshalling the evidence of the practical operation of the rule. So statistical evidence is evidence of the fact of significant risk by the operation of that framework. Scalia, what about the statutes allowing relatives and friends of the victim to testify? Let's assume a crime committed before, a horrible crime committed before that statute is enacted. Does it violate the ex post facto law to give effect to that statute? No, Your Honor. I think there's a series of cases saying those kind of changes in trial procedure would not be within the ex post facto law. Scalia, don't you think it creates a significant risk that the defendant will get a higher sentence? Don't you think that's the whole object of the law, in fact? Well, but you have to show, I think they have – this is a core sentencing law. It changes the law of punishment, which is a different procedure. And in Miller, the Court said that when there's a change in the actual sentencing standard, the number of years, that's substantive, not procedural. What if you have a law that sentencing judges must consider these factors? And one of the factors is whether the defendant has strong family ties that will be, you know, jeopardized or whatever if he's incarcerated. You don't want to take him away from his family because that would penalize other people. And then Congress thinks that's not a good idea and they take that away. Is that an ex post facto violation? It increases the factors or the risk that the defendant will get a higher sentence before he could take advantage of the fact that he had, you know, a particular family situation. Later, he could not. That's a change in what the sentencing court must consider and it is to his prejudice. I think if it is simply a change in the mix of factors, even a mandatory factors, it wouldn't necessarily create a significant risk. But the guidelines. Roberts Under our modification of the guidelines approach, isn't that just a list of factors that the Court should consider or must consider? Well, Your Honor, I think the guidelines are distinctive because they are the actual benchmark and they must be the starting point for any sentencing. And it's critical at what range you start your sentencing analysis. It's going to affect the analysis whether you're starting at a range of 20 to 30 months or 120 to 30 months. Scalia Is that what the – who says that they're the benchmark that you start with? Where is that writ? That's in Gall. So that's a construction of what's implied in the sentencing reform act. A court must begin with that? Yes. And the Court not only must begin with it, must be cognizant of it throughout the process. And any feature, any of the other… Roberts So what if the law said court must begin with a comparison of what the average sentence is across the country, okay? And the data collection over time becomes more sophisticated and they can give you a more accurate number for what the average sentence is. And it turns out it's higher than what their informal survey was before. Is that an ex post facto violation? I don't think necessarily so, but this is a requirement to actually consider a range. No, no, it would be the same thing. One of the things that the Sentencing Commission considers is, of course, what the average sentence is or were around the country. And let's say that the law says that's something you have to consider, and the technology or the range of judges that they can survey becomes more sophisticated, the number goes up. I think it may be if you had the exact same read-it-and-golf framework. And that framework is that that range actually is the benchmark and the starting point. The district court must justify any deviation from that range, and this is language from Gall, with sufficiently compelling justifications to support the degree of the variance. And it's then reviewed on appeal. And so the answer to my question is? It would be — I think it would be likely if it were within the same framework, if it's the mandatory benchmark with appellate review for substantive reasonableness and a presumption of reasonableness on appeal would attach to that standard. Roberts. So just getting more accurate information violates the ex post facto clause in the framework that you've set forth? I think if it's an actual — well, I don't know — the distinction I was trying to draw is that if you actually — if the statute has effectively delegated the specification of a specific range as opposed to just a data factor that might change over time. And that's the key change in law here. As I mentioned, 1998 had to consider 36 to 47 months. With the Guidelines Amendment, the law changed. He now must consider for that offense and offender category a range of 70 to 87 months. And as the mandatory benchmark. That's a change in the law. And then you go to the test of significant risk. Alito, what if the statistic showed that nationwide only, let's say, 25 percent of defendants were being sentenced within the guideline range? Would that change your argument? I think it makes the — well, we have an argument that's specific to our sentencing. But if in a particular case a defendant were making an empirical analysis that may diminish the chance of significant risk, but with a caveat, because it's not just sentences within the guidelines range. It's the fact that the district court, even if it sentences out of the guidelines range, the ultimate amount that it sentences to is going to be partially determined by that mandatory benchmark. And that's an important point. And as I said, the significant risk is a risk of any increase in quantum of punishment. So it's really, is there a significant risk that had he been — had the old guidelines been in place as the benchmark, that he would have gotten a sentence of less than 70 months? Alito, I think it's clear that there's a fair chance that as time goes by, we are going to see fewer and fewer sentences within the guidelines. As judges who began their careers during the guidelines, the mandatory guidelines era, leave the bench, new judges come in who never had to deal with the mandatory guidelines, I think we're going to see fewer and fewer guideline sentences. And the percentages in some districts are really quite striking. I'm told that in the southern district or the eastern district of New York now, only 30 percent of the defendants receive within-guidelines sentences. So if you're saying that's changed over time. Well, when I was on the court of appeals, we thought it was our responsibility to ensure that the district courts were complying with the sentencing requirements of the Affordable Care Act. That might not have been true across the river, but we thought it was our responsibility  of the Affordable Care Act. Sotomayor, let's say this case comes back in 20 years, and the statistics show that only a distinct minority of defendants are being sentenced within the guidelines. Would the case come out differently? Perhaps, but again, this is an as-applied challenge, so we look to current data. There has been a very slight gradual decline, but there's still 80 percent of the sentences are either within the guidelines or they're below the guidelines range pursuant to a guideline-sanctioned departure motion from the government. Even the Sentencing Commission attributes that relationship to the fact that it's the initial starting point in the 2012 Booker report. So I think it has a profound effect. Now, if the Court wanted to rule more narrowly in this case on significant risk, it could. And it could adopt a rule that when the new and the old guidelines ranges do not overlap at all, so that any sentence that would be in the new guidelines range would have required an upward variance. And here, a 50 percent upward variance, those are as rare as hen's teeth in the district courts, that at least shows, at a minimum, a significant risk. Absent any indication that the judge, as the question was posed, wasn't going to apply them at all, here the judge specifically and expressly deferred to the 2009 guidelines. So it's clear that the significant risk was increased by this change in the law. Scalia. Your case depends, it seems to me, upon the proposition that significant risk is only applicable at the sentencing stage. And I'm not sure that that's true. I mean, what — why would that be so? What if you have a new law that permits evidence to come in in a criminal trial that previously was not allowed to come in? Let's say the testimony of a wife or whatever. I think the law is pretty well established that that change in procedure does not violate the ex post facto law. And your response to that is, well, that's not sentencing, it's trial. So what? I mean, if — certainly making a conviction more likely is even worse than making a higher sentence more likely. I think my response would be, Your Honor, that's not — that particular change would not be in the third category of Calder, the increase in punishment. That would be in the fourth category, in the change of the evidence, where you don't even look to significant risk. But I think the change in punishment, at a minimum, it's the sentencing law of this kind. And would it be ex post facto in the hypothetical, Justice Scalia gave? No, I don't think so, because I think — well, it may, depending on the circumstances, be within the fourth category, but not under the third. I think in these circumstances — Sotomayor, can you tell me the narrow rule that you would propose getting back to — The narrow rule — Justice Scalia, which is procedures change risk. Having a victim testify at sentences, at a sentence, is likely, if you examined it statistically, to increase a sentence. So assume that's the set of hypotheticals. You change it. Now victims can. Why is that not, or is it, an ex post facto change? I don't think so, because the Court has generally excluded procedural changes, even if you could show— So why is this not procedural? Because give me the rule where I can draw a line between those changes that are permissible and those that are not, not the general statement you're making, because both increase the risk of a higher sentence. So it can't be that. No. What Miller said in Miller v. Florida, the argument was made that a change in the sentencing range, the presumptive range, was a change in procedure, and the Court said no, that's substantive. This is the substantive benchmark. That is substantive. But that was in that Florida case, was the mandatory, almost mandatory guideline. And I think our starting point is, your starting point, too, is that when the guidelines were mandatory, it was ex post facto, because our decision in the Florida case said it was. Is this sufficiently different now that the guidelines are advisory rather than mandatory? No, Your Honor. I think it would still be a substantive standard, regardless of whether it's binding or whether it's advisory. It's still a substantive standard. So if it's a change in substantive sentencing law, you go to significant risk analysis. And there you either look to the inherent risk, and I think there is an inherent risk in this framework that there's going to be some increase of some quantum of punishment beyond what they would have done if they'd applied the older guidelines as the mandatory benchmark. But saying that the sentencer has to consider testimony from the victim or from relatives of the deceased, that change in sentencing law is okay. Under the fact that it's considered a procedural law, not substantive. Well, it pertains to sentencing. It says what the sentencing authority, the judge or the jury, must consider. Well, it's just evidence brought before the sentencer. Well, yes. I don't see any difference between that and saying that the guidelines have to be considered by the sentencer. Well, I may have misheard your hypothetical. In that case, it may very well be a sentencing law. It may pass that threshold, and then you go to significant risk. I would say significant risk is more difficult to determine than in this particular case, where you have the actual starting point, an actual number, which has to be considered. Sotomayor, you're answering me differently now? I'm sorry? You're answering me differently? I posed exactly the question, Justice Scalia. I may have misheard, Your Honor. I said the sentencing, the assumptions I made were the sentencing law changes. Victims must testify, judges must consider what they say, and after 5 years, it's proven that when victims speak, the sentences are higher. Is that a substantive or a procedural law? Well, I think Miller did draw a distinction. There are procedures that are involved in sentencing, and I'm not sure if the Court's procedure substance cases have drawn that distinction. If it's a rule, do you want something as broad that says even that kind of change can be an ex post facto, and if you don't, articulate how I draw the line? I think the Court could draw the line simply on substantive standards that are applied. But if the Court were to go the other direction, significant risk. What does that mean to you, the number of years in jail? Is that as limited as you want it to be? Well, it could be. I mean, or at least, you know, if it's a mandatory sentencing factor, something like that as opposed to the other. But we know that's Miller. Right. This is not Miller. Well, but even the – there are sentencing factors that are mandatory other than the guidelines range. I would have thought you'd have gone back to Calder and Bull.  But yours is a law that changes the punishment. It is a law that changes the punishment. Does it affix a higher punishment in the words of Calder v. Bull? I think it does. Well, I don't think that's the question at all. The answer to that is quite easy. It does not affix a higher punishment, does it? But the Court in Garner, Lentz have equated that with increased risk of significant punishment. And that – the importance of Garner is that it recognizes that the ex post facto can't be applied. Okay, then we lie on Garner, but not on Calder v. Bull. Yes, I think – but Garner is applying that there. I wouldn't concede that. I wouldn't concede that. Okay. So what Garner does say is that you look to the significant risk, and it's important for ex post facto jurisprudence because the exercise of discretion can't displace ex post facto protections. You have to look to the effect on the actual punishment. Could you remind me, it's in the brief, if a sentence is appealed, what is the review authority of the appellate court? It must begin with the guidelines as the framework? The review authority is to review for both procedural and substantive reasonableness. So procedural, I think, has been interpreted to look at whether there was a correct calculation, whether they did not treat it as mandatory, that they considered it as the benchmark. And you made it. But isn't the important point, Mr. Kinnaird, that there's a presumption of correctness that attaches to guideline sentences on appeal that does not attach to non-guideline sentences? Yes. I was getting to that, Your Honor. I mean, this is, as one would think, a great legal consequence.  And the second step is substantive reasonableness review, and the Court has held that an appellate presumption of reasonableness may attach. So it attaches only to this guideline range. And that makes the risk of reversal higher if you go outside the guidelines. Alito, do you know what the statistics are as to the number of below-guideline sentences each year that are reversed by the courts of appeals on the ground that they are not reasonable? Well, I think that they are fairly low. I don't know the precise statistics. I believe they are low for defendant appeals. But what partly you are worried about here is, is the government going to appeal? They don't appeal very often. They have a high rate of appeal. I'm told that it's in the single digits. I believe the government, yes. It may be, I don't know, it's not a great number, but they prevail when they do. And it does have some effect. I'm sorry, who prevails, the government or the courts? The government tends to prevail when it brings it. But, you know, that's a potential deterrent effect. But even the fact of substantive reasonableness review, you have to have reasons, you have to be able to justify your deviations. Are you aware of any circuit court case in recent time where a circuit has reversed a lower range than the guideline basically because the deviation from the guideline was unreasonable? I'm not sure. I haven't reviewed all those cases, Your Honor. I'm not sure. So the returning to the question of this particular sentencing, I think if the Court were to rule on a narrower ground based on non-overlapping ranges, which is not going to be particularly common, here is unquestionably a significant risk. You have a defendant who prior to this course of conduct had lived an exemplary life, his threshold, his the loss in his case barely crawled into the 2.5 to 5 million. It was about 40,000 over 2.5 million. And the district court sentenced at the bottom of the guidelines range, agreeing with the policy of increasing sentences with the amount of loss, that same policy was present, but not the same level of increase in the 1998 guidelines. So I think there is clearly, as applied to his sentence, a significant risk he would not have gotten 70 months, which would have been an upward variance of 50 percent from the old guidelines range. But I think if the Court does wish to consider the broader ruling, I think it's also true that it is inherent in this system, in the Rita and Gall framework, which provide for a mandatory benchmark, which provide for the substantive reasonableness review, that you're going to have some significant risk of some increased quantum of punishment as a result of this change in law. I would like to reserve the rest of my time for rebuttal. Roberts. Thank you, counsel. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. This Court made clear in Miller v. Florida that an ex post facto law has to change, quote, the legal consequences of a prior act. A guidelines amendment doesn't do that. A district court has the same authority and the same obligate formula. Sotomayor Why are you fighting this proposition? If the starting point doesn't matter, why don't you stick to your old position that judges should start from the old one and simply consider the new one? Why this whole Supreme Court case? Well, Your Honor, we oppose certiorari largely on that ground. We don't think the guidelines impose a constraint on a district court's exercise of sentencing discretion. That is, if the judge decides that a guidelines range that the commission has suggested at some other time suggests a more appropriate sentence, or if the judge believes that some sentence that's unrelated to any guidelines range is the most appropriate sentence, the judge has discretion to impose that sentence. So practically speaking, do you believe it makes no difference? Your Honor, I freely believe that the guidelines are very influential to many district judges, and district judges often agree with the guidelines. They often impose sentences within the guidelines range or close to the guidelines range. But they are the same. Ginsburg Your position is a change, at least in the position that the government took in the Seventh Circuit case that started all this. The government confessed error. The government said the district judge should have used the guidelines that were in effect at the time the offense was committed, and the government came to the Seventh Circuit and confessed error. So there was not even an argument until the Seventh Circuit, and Judge Posner wrote the opinion that included all the hypotheticals that were aired earlier about the victim impact statement, and all of those are in that opinion. So it was only after, after the Seventh Circuit opinion, that the government changed its position. Your Honor, the government changed its position in response to this Court's decisions in Gall, Kimbrough, and Irizarry, because before those decisions came out, there was an argument that the guidelines still imposed some substantive legal constraint on a district court's sentencing discretion. After Gall, Kimbrough, and Irizarry, after Nelson and Spears, that argument no longer exists. Rita makes clear that district courts cannot presume a guidelines range to be reasonable. Irizarry makes clear that a defendant is constitutionally on notice, that he can get sentenced anywhere within the statutory range. And Gall makes clear that courts of appeals should apply the same deferential standard of review to every sentence, regardless whether it falls within the guidelines range, just outside the guidelines range, or far outside the guidelines range. Ginsburg. But the guideline frame gets a presumption of reasonableness at the appellate level. That's right, Your Honor, and I think Rita actually supports our position, not Petitioner's. The Court made clear in Rita that the presumption of reasonableness on appeal that courts of appeals can choose to apply but need not has no legal effect. Rather, it reflects the common-sense proposition that when the commission recommends a particular sentencing range as to a particular class of defendants, and the district court in its discretion actually imposes a sentence within that range, that the sentence is likely to be reasonable. The entire premise behind the presumption of reasonableness that was adopted in Rita is that district courts are, in fact, exercising their discretion when they impose sentences. And that's the same premise on which we'd ask you to decide this case. Sotomayor, what is the reason that miscalculating a guideline is considered a procedural error? Your Honor, it's very clear from 3553a.4 that Congress wants district courts to start with the right mix of information, which includes the most up-to-date recommendation of the Sentencing Commission. That begs the question. Obviously, if we hold it's a procedural error to miscalculate the guidelines, using the guidelines has some significant importance in the process. It has importance, Your Honor, and as I've said before, they can be very influential to judges. But the reason why it's an error if to miscalculate the guidelines is not because the guidelines impose any substantive constraint on a district court's discretion. After a reversal for miscalculating the guidelines, the judge is free to impose the same sentence anyway, and there's no constraint on the judge's discretion that arises from the guideline frame. Kagan. Kagan. But what that suggests is that the guidelines serve as an anchor and are supposed to serve as an anchor, and that the reason why the miscalculation is error is because you've picked the wrong anchor, and that's going to affect or has a significant likelihood of affecting your ultimate decision. And isn't that really what we've suggested is the way the guidelines ought to work and the way you think the guidelines ought to work, that it serves as an anchor for sentencing decisions? Yes, you can vary, you can deviate, but it's your anchor. Feigin. Feigin. Your Honor, there are two things you could mean when you use the word anchor. One, you could mean that there's some sort of legal anchor, and we think that the Court's decisions that I've just described, in particular the Court's repeated insistence that district courts cannot presume a guidelines range to be reasonable, means that district courts cannot treat them as a legal anchor. Second, you might be suggesting that they serve as some sort of psychological anchor. That's not a concern of the Ex Post Facto Clause. The Ex Post Facto Clause doesn't guarantee defendants a right to a judge who has a particular sentencing philosophy. Kagan. I think I'm saying more than it's all in your head. I think I'm saying you start in a particular place, you have to get the particular place right, the appellate court looks at the particular place that you've started and if you've ended up there, has to grant a presumption of reasonableness, that the rules are all geared towards saying, yes, you can deviate, but you have to understand that there's the deviation requires some kind of thought process and some kind of reason. Otherwise, this is where you should be. Feigin. Your Honor, the Court made clear in Pepper two terms ago that the district court's overarching legal duty is to impose a sentence sufficient but not greater than necessary to meet the statutory purposes of sentencing in section 3553A2. The guidelines are one of several factors that inform the district court's exercise of discretion. If a district court treats the guidelines as some sort of legal constraint this Court's decisions say can't be treated as, that would be statutory error. Breyer. Well, it isn't, but that, I think, is an undecided question at best. If you won the case on that ground, I would say that what the guidelines in the Sentencing Commission are best at, gathering information from across the country, and saying a typical person who commits this crime in a typical way should be sentenced to the typical range that applies, let's say, 18 to 24 months, that would be down the drain. And I think that Rita, in fact, and the other cases, have at the very most left open and maybe decided against you the question of when a court of appeals gets a sentence from a judge who does not apply the guideline because he doesn't like the policy judgment. That's a different matter from when he applies it than when he thinks he shouldn't apply it because the person in front of him doesn't meet the policy conditions. Those are different. The commission has the expertise in the first, the judge in the second. And so there is at least a question as to whether the court of appeals should give more leeway to the guidelines in the first and more leeway to the judge in the second. I think Rita is consistent with that, and I think every opinion we've written is consistent with that. And I'd hate to see that suddenly decided and changed in a way I think is inappropriate in this case. So have you all thought that through? And is the position of the government now that we think the guidelines, even if it's a policy matter that they've gathered evidence on, are entitled to nothing if they run across a district judge who happens to think, though he was an outlier, that the outliers are right as a matter of policy, which, of course, will always be true. Every judge who is an outlier thinks the outliers are right. Otherwise, why would he do it? You see? Now, I didn't know that issue was in this case. And that changes the case dramatically for me. And I thought we could decide this just on the ground, that this is a law that changes punishment. It's a law. It's a regulation. And Justice Scalia, I thought, was completely right. The question is whether it inflicts greater punishment. And there is a test on that. And the controlling inquiry is whether retroactive application of a change in a law that affects punishment created a sufficient risk of increasing the measure of punishment attached. All right? And that's what I thought the framework of law was in this case. Now, this is sort of tough for you to do an oral argument, because I'm just perhaps bringing it all up to get it all out there and see what you think. Let me start at the end there, Justice Breyer. I disagree with all that, by the way. Justice Breyer, beginning with what you said at the end there, I think it's – it would be inappropriate to untether the significant risk test from the requirement that there be an ex post facto law. That is, there has to be a significant legal risk, a risk that is traceable to some sort of change in a decisionmaker's authority with respect to sentencing. And we don't have that here. A district court has the same authority and the same obligation to impose an appropriate sentence the day after the guidelines are amended as the judge had the day before the guidelines are amended. And any judge who forgets that is going to be committing statutory error and the sentence could be reversed on appeal for violating the Booker remedy. And that's the correct way to do it. Kennedy, but when it comes to the court of appeals, it's different. The court of appeals begins with a framework of whether or not it's within the guidelines. That's how it begins to measure the exercise of discretion. Well, Your Honors, as I've explained, the reason why courts – the only way in which courts of appeals can apply a different standard of review to a sentence, depending on where it falls in the guidelines range, is the presumption of reasonableness the Court recognized in RITA. And I think RITA makes quite clear that that's a practical presumption. That is, it simply acknowledges the common-sense proposition that when a district court exercising its discretion reaches a judgment that accords with the commission's expertise, it's likely that sentence is reasonable. I don't think that's a problem. Sotomayor, there's a lot of dispute now about the child pornography sentences. Let's assume, and this goes back to Justice Breyer's question, a judge comes in and says, I know child pornography is criminal, but I don't think what the guidelines are imposing are fair. To any defendant. So 10 days in jail, why would that be substantively unreasonable? Your Honor, it would depend on the individual circumstances of the particular case. No, I'm giving you exactly what the judge says. You don't think that the appellate court would say that's substantively unreasonable because it's not giving due deference to the commission's assessment of the seriousness of this crime? I think the court of appeals might say that is substantively unreasonable because it's a very, very low sentence, even in comparison to the statute. I assume that the statute is one that permits 10 days, right? It's sort of an unusual statute, but if a hypothetical is in the real world, the statute provides, you know, 10 days to life, okay, and the judge thinks 10 days is okay. I think that's the hypothetical. And, Your Honor, in that case, it is possible a court of appeals would decide that that's substantively unreasonable. It's possible a court of appeals might reference the guidelines. But the reason why the court of appeals would find it substantively unreasonable is because as a whole it is substantively unreasonable and not because it varies too far from the guidelines. I also want to emphasize that Ginsburg's case is about the D.C. Circuit, in opposition to the Seventh Circuit, said it is enough that using the new guideline created a substantial risk that the defendant's sentence was more severe than it would have been if the guidelines in effect at the time of the crime were used. And he said there's no doubt that this case fits that description. There was quite a substantial risk that the elevated guidelines would result in a more severe sentence. Well, Your Honor, there are two complaints that Petitioner could be making about his particular sentencing. One could be that he thinks the judge treated the guidelines too deferentially as a legal matter. And if that's what he believes his remedy is, a claim of statutory error under Booker, he's never made that claim. The other complaint is that there's the question is which guidelines in this case. And he's saying it's the guidelines in effect at the time he committed the crime. We're not dealing with other. Ginsburg. I mean, it's quite a simple choice. Is it, does the Court start with the guidelines in effect at the time the crime was committed, or does it start with the guidelines in effect at the time of sentencing? And whichever set of guidelines district court started with, it had discretion and, in fact, the obligation to impose the appropriate sentence under 3553A. Now, Petitioner's Ginsburg. Ginsburg. We know that this district judge, he didn't want to get into any philosophical things about what was better or what was worse. He said, I want to follow the guidelines. So the question for him was only which guideline. He got his answer from the Seventh Circuit. They said the guidelines at the time of sentencing. A judge in the D.C. district court would get the other answer, the guidelines in effect at the time the crime was committed. Your Honor, Petitioner argued in this case that the former guidelines range suggested a more appropriate sentence than the 2009 guidelines range. The district court considered that argument and it rejected it. And defendants are always free to raise that argument. If I could go back to Justice Sotomayor's child pornography. It's not a question of whether the judge thought that the one guideline was better than the other. He specifically said he wasn't interested in that question. The question was, which guideline does he follow? Which, what does he start with? And you recognize that you do start with the guideline. Kennedy, I agree with Justice Ginsburg's follow-up question. It seemed to me you avoided the question. You said, oh, well, the judge looked at all this and selected the sentence he did. But he did so because he referred to the later guidelines. And I think you have to recognize that. I think you're saying it doesn't matter if they're advisory. Well, I'd like to finish. Unless I'm wrong under the record. Well, Your Honor, on the record, I think if you look at the full sentencing transcript, which is in the joint appendix, you'll see that one of the questions the judge had to answer was which set of guidelines were provided, were the set of guidelines that he had to calculate under 3553A4A2. And then there was a separate section in which he considered the argument that the 2009 guidelines were too harsh. If you look at the sentencing memorandum the Petitioner filed in this case, it argued that the increase of the loss amounts in the fraud guidelines was too harsh. The judges often impose sentences that are under the guidelines, and the district court should do so here. The district court considered that argument and rejected it. But the district court was following orders. He was following the Seventh Circuit. The Seventh Circuit had said, you start with the higher guidelines. Justice Ginsburg, it's – the Court considered these as two separate questions. One is, which is the set of guidelines I'm required to calculate under section 3553A? And second, having calculated those guidelines, what sentence should I impose with the guidelines as one of the factors that the Court considers? Mr. Feigin, you're sounding awfully like that according deference to the guidelines counts as reversible error. No, Your Honor. That's not what I'm trying to say. I'm saying treating the guidelines as some sort of legal constraint on the district court's sentencing discretion is reversible error. Now, if a district court chooses in its own discretion to give weight to the guidelines, that's within the realm of choice that 3553A provides. There are many circumstances in which you can choose. It is reversible error, is it not, simply to blindly apply the guidelines without considering the factors in 3553. That's reversible, isn't it?  And, Justice Kagan, any district courts would agree with that. Surely you do not want judges living in a world where they think that they cannot give deference to the guidelines, isn't that right? You want them to give appropriate deference to the guidelines, isn't that correct? Your Honor, we want them to find the guidelines persuasive and influential. We recognize that under this Court's decisions they cannot treat the guidelines as a legal constraint on their sentencing discretion. If a judge follows the guidelines, that's because the judge is exercising its discretion to decide that a guidelines-range sentence is appropriate in that particular case. Now, there are many instances in which judges choose not to do that. So if I can, for example, Justice Sotomayor brought up child pornography. In fiscal year 2012, a defendant for a non-production child pornography offense, that is, receipt or possession of child pornography, was substantially more likely to get a non-government-sponsored below-range sentence than to get a within-range sentence. 48.4 percent non-government-sponsored below-range, 32.7 percent within-range. If we want to talk about fraud for a minute, which is what the Petitioner in this case was charged with, if you look at page 67 of the commission's post-Booker report, and I'd encourage the Court to read that report in full, because it makes very clear the variations in sentencing practices among – depending on the crime, depending on the particular circuit, depending on the particular district, and even depending on the particular judge. Ginsburg. Was Judge Randolph wrong when he said, quoting the sentencing commission, that within guidelines range, even after Booker is distended, indeed, the actual impact of Booker on sentencing has been minor, and for that minor, he cites the sentencing commission? So, Your Honor, I think the post-Booker report refutes that in respect I just suggested. It says that there are actually very different sentencing practices depending on the particular crime, depending on the particular judge. But this statement comes from final report on the impact of United States v. Booker on Federal sentencing. Your Honor, the commission says many things in its report. One of the things it says is that in the aggregate guidelines, actual sentences do tend to track the guidelines. But if you look beyond that one aggregate statistic and you start to look at the variations in sentencing practices in courts across the nation that vary not only by judge but by guideline, you see that the system is actually operating the way you'd expect of persuasion. Breyer. I see where you're going. What I think you're saying is whatever the sentence is, I am a judge. I read the guidelines. Now, I may think that I'm more likely to get reversed if I have a substitute a different view than the commission had on a matter of policy. That's all true. But still, I don't have to do it. No matter what it is, I can not use the guidelines. And if I get reversed on other grounds or with a reasonable, da, da, da, da, da, but there's no legal binding nature there. That's your point, I think. That's exactly our point, Your Honor. All right. If that's exactly the point. I'd like to add two observations to that. First of which is, as an empirical matter, it is extremely unlikely for a sentence to get reversed on substantive reasonableness grounds. The commission's post-Booker report, and I'm talking about the one that they just issued a few weeks ago that's cited in the reply brief, states that substantive unreasonableness reversals are very rare. Petitioner on page 30 of his brief cites a database that contains 38 such reversals post-Gaul. All right. But now I can narrow the question, I think. And the second point I'd like to make, Your Honor, with respect to that, is that I don't think this Court should assume that district courts are actually going to change what sentences they impose and not impose the sentence they believe is sufficient but no greater than necessary to meet the purposes of sentencing just because they feel it's sufficient. Kennedy, that gets back to your argument. I sense that you want me to leave the bench saying the guidelines just don't make any difference. Suppose the district judge said, you know, if it were just up to me, I would give this lower sentence. But the guidelines are an important institutional part of our system. Uniformity in sentencing is desirable. For us to take into account the experience of other courts and what the Sentencing Commission does is very important. Therefore, my discretion is guided by these guidelines. You don't want me to say that. I absolutely do not want you to leave the bench with the impression that the guidelines are unimportant. I want you to leave the bench with the impression that the guidelines don't impose any legal constraint on a judge's exercise of discretion. Different judges – not only does it vary by guideline, but different – Kagan, let's take this example. Let's suppose that there's a crime and the punishment for the crime is 5 years to life, all right? Now, Congress passes a statute and it says, no, we think this crime now is much more important than we used to. Now it's 25 years to life, right? A person commits the offense prior to that change. Absolutely obvious case, right, that you have to apply the 5 years to life, right? Obvious, correct? Yes. Okay. Now the Sentencing Commission does what the Sentencing Commission always does when there's a legislative change like this. It says, well, we have these guidelines. It assumes 5 years to life. We have to change our guidelines because now it's 25 years to life. And it passes a guideline amendment which completely conforms to the legislative amendment. But you're saying, no, the 25-year-to-life guideline is the appropriate one to implement, even though the 5-year statute is the appropriate one to implement, is the appropriate one to give effect to. Can that possibly be right? Your Honor, I think I'm saying something slightly different. I think under 3553a, the Court would calculate the current guidelines. Now, the defendant would have a very good argument in that case that the current guidelines range would simply not be appropriate for him. And I think a district court would do well to listen to that argument in that particular case if it thought that the sentences that the new guideline range was suggesting were out of whack with the statute at the time the offense was committed. Scalia, Mr. Fagin, I'm under the impression, more than the impression, I know, that the Sentencing Commission can make a revision of the guidelines retroactive. Can it only do that for revisions that lower the suggested penalty, or can it do that for revisions that increase it as well? I believe it's only for revisions that lower the suggested penalty, Your Honor. Only for lower, okay. Because if it could increase it, then it would be violating according to your friendly ex-quota facto clause. And, Your Honor, getting back to how the advisory guidelines are working in practice for a minute, which, again, is I don't think what the focus should be, the focus should be on whether there's actually been a change in the law that either increases or decreases a sentencer's discretion. If you imagine two States, for example, each of which had exactly the same advisory guideline system that the Federal Government has, and in one of them judges are, you know, tend to find the guidelines very persuasive, they sentence within the guidelines 70 percent of the time, and the other one, judges exercising their discretion, don't find the guidelines very persuasive and they sentence within the guidelines 10 percent of the time. I don't think it makes sense that under the exact same legal regime, an amendment to the guidelines in one State would be an ex-quo facto law, an amendment to the guidelines in the other State wouldn't be an ex-quo facto law. Kennedy, but your statement to me was, and to us earlier, was that the — there is no legal constraint on the exercise of the discretion. I agree, the judge — everybody knows the judge can go lower. But that overlooks the fact that discretion is defined by legal standards. That's how we begin to think about discretion. That's how appellate courts weigh discretion. And again, you want to give the guidelines no effect in determining how that discretion is shaped, guided and exercised. Your Honor, they are a factor. They are a factor under 3553A. They are a factor that the district court has to consider. But they don't themselves in any way, shape or form constrain the district court's exercise of discretion. A district court can decide that — not to impose a guideline sentence. Kennedy, would you accept the fact that they define the discretion even though they don't constrain it? Your Honor, I wouldn't say they define the discretion either. I think they are a recommendation and information that informs the exercise of discretion. Kennedy, what if — I'm sorry, are you finished? I'm happy to be, Your Honor. Roberts, let's say you had a statute, not a guideline, a statute that said the sentence for a particular offense will be 5 years, but the judge can lower it to 4 years if he thinks it would be a manifest injustice to sentence to 5 years. That provision is later repealed. It now just says the sentence should be 5 years. Does that violate the Ex Post Facto Clause? I think it might well violate the Ex Post Facto Clause, Your Honor, because in that case you have something we don't have here, which is that the decisionmaker has less discretion than— No matter how narrow — no matter how narrow the original grant of discretion is. In other words, only in the case of manifest injustice or however dramatic you want to limit the available discretion. The reason I said might well is I think at that point the Court would have to look at the significance of the increase or decrease in the sentencer's authority and decide whether that was a significant enough increase or decrease to trigger the Ex Post Facto Clause. Right. How would a court go about answering that question? I think that's where the significant risk test comes in. And under the significant risk test, you can either see whether it facially has that effect. We know that's not true of the Federal sentencing guidelines because the courts made clear they don't impose any legal constraints. Or you could see whether it has that effect as applied under Garner. But we know that— So it's a statistical evaluation of the kind we were talking about. You look and you say, well, it's only once in a blue moon that a judge invokes the manifest injustice provision. So it's not increasing the risk. On the other hand, well, every four out of five judges do, and therefore it is an increase. Is that how you— I think it's fundamental. The decision in Garner doesn't precisely describe exactly how the significant risk inquiry works. I think it is fundamentally a legal inquiry because the bottom line question the Court's always trying to answer is whether there has been an ex post facto law. And I think to the extent it's okay to look at empirical data, and I don't think the Court in Garner expressly says that that's the kind of data it was contemplating, it would be to inform how the legal framework actually operates in practice. And if the Court found it necessary to look at that here, the Post Booker report makes clear that sentencing practices vary over the districts, over the circuits, and with respect to particular guidelines. So just as Alito brought up the example of the Eastern District of New York, we don't have to look any further than the Northern District of Illinois, where Petitioner was sentenced here, where the latest 2012 statistics that came out on Friday show that a defendant actually has a slightly higher probability, very slightly higher probability, of getting a nongovernment-sponsored below-range sentence than of getting a sentence within the guidelines range. I think all these variances show two things. One, they show that the system is working exactly as you'd expect an advisory system to work. And two, I think they show that some sort of narrow focus on empirical data, which is what you're left with once you divorce the ex post facto inquiry from a change in law, is inherently unworkable. You have to go to the other side of the line, which is what happens to the sentence, and they follow each other identically, exactly. You can't get a chart that looks better from this than from Mr. Kinnaird's point of view. So let me say two things in response to that, Your Honor. If you look in the post-Booker report, they have charts like that that are broken down by offense. You didn't finish your sentence. If you look at fraud and you look at child pornography, they deviate. When they go to the guideline suggestion goes up, the sentences don't go up in accordance with that at the same level as the chart you're looking at. Thank you, Mr. Chief Justice. Thank you, counsel. Mr. Kinnaird, you have three minutes left. Thank you, Mr. Chief Justice. Five quick points. First, the government says this must be an overt legal restraint to be within the ex post facto clause. This Court has repeatedly, in Weaver and other cases, said it's the effect of the change of law, not its form, that matters for ex post facto purposes, the effect on punishment. And what this revision and amendment of the mandatory benchmark did was to alter the legal framework in a way that channeled and redefined the exercise of discretion in the direction of greater punishment. Secondly, what range is the mandatory benchmark under the statute matters greatly, as Justice Kennedy alluded to, to appellate review for substantive reasonableness. It's the key factor in determining whether a sentence is reasonable and it's the standard to which a presumption of reasonableness may attach. Third, as far as the record, there's no analysis in the record of the 1998 guidelines other than to set them aside. And what you have to have under the Constitution is he has to actually apply those as the statute required at the time of the offense as the mandatory benchmark. Instead, he's quite clear, he's applying the 98 guidelines, he's deferring to the policy judgments there and to the loss calculations. So it had a clear substantive effect on his risk of greater punishment. The Post Booker Report does have those lines, those charts that show that for all offenses and for fraud offenses, when the guidelines minimum goes up, the average sentences go up, and that's a very compelling point of evidence. And finally, I would point out here that one of the amendments here was actually a response of the commission to a congressional directive in the wake of the Enron scandal in the Sarbanes-Oxley Act, where there was great public and legislative outrage over light fraud sentences to reconsider the fraud guidelines. And that puts this in the core of the Ex Post Facto Clause, that it violates fundamental notions of retroactivity for a legislature to be able to alter the law of punishment after the offense. Thank you. Roberts. Thank you, counsel. The case is submitted.